KATHERINE B. BUSHMAN (15561)
Assistant Utah Attorney General
DEREK E. BROWN (10476)
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: kbbushman@agutah.gov
*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AYANA ADAMS,<br><br>  Plaintiff,<br><br>v.<br><br>TOOELE COUNTY SCHOOL DISTRICT,<br><br>  Defendant. | **PARTIAL MOTION TO DISMISS AND SUPPORTING MEMORANDUM**<br><br>Case No. 2:25-cv-00438-DBB-JCB<br><br>Judge David B. Barlow<br>Magistrate Judge Jared C. Bennett |

Pursuant to Rules 12(b)(6) and DUCivR 7-1 of the Federal Rules of Civil Procedure, Tooele County School District (the "District" or "TCSD"), through counsel, respectfully submits the following *Partial Motion to Dismiss and Supporting Memorandum*.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

BACKGROUND ........................................................................................................................... 1

LEGAL STANDARD .................................................................................................................... 2

PLAINTIFF'S ALLEGATIONS .................................................................................................... 3

ARGUMENT .................................................................................................................................. 6

    I.    PLAINTIFF HAS NO PLAUSIBLE DUE PROCESS CLAIM. ........................................ 7

        A.    Plaintiff Was Given Sufficient Notice. ................................................................... 7

        B.    Plaintiff Was Given Sufficient Opportunity to Respond Prior to Her Termination. ........ 9

        C.    The District Was Not Required to Follow Its Own Policies to Satisfy Federal Due Process. ................................................................................................................. 10

    II.    PLAINTIFF'S UPPEA CLAIM IS UNTIMELY. ............................................................ 11

        A.    Neither *Zimmerman* Nor the UPPEA Supports Plaintiff's Claim. ................................ 12

        B.    The District Has No UPPEA Policy to Toll Plaintiff's Claim. ..................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 2

*Benavidez v. City of Albuquerque*,
  101 F.3d 620 (10th Cir. 1996) .............................................................................................. 7

*Brown v. Univ. of Kansas*,
  599 F. App'x 833 (10th Cir. 2015) ..................................................................................... 10

*Calhoun v. Gaines*,
  982 F.2d 1470 (10th Cir. 1992) ............................................................................................ 7

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) ......................................................................................................... 7, 8

*Cuervo v. Sorenson*,
  112 F.4th 1307 (10th Cir. 2024) ........................................................................................... 2

*Davis v. Utah*,
  No. 2:18-CV-00926-TS, 2021 WL 3930277 (10th Cir. Sept. 2, 2021) ............................... 11

*Hill v. Trs. of Ind. Univ.*,
  537 F.2d 248 (7th Cir. 1976) .............................................................................................. 10

*Hulen v. Yates*,
  322 F.3d 1229 (10th Cir. 2003) ............................................................................................ 8

*M.A.K. Inv. Grp., LLC v. City of Glendale*,
  897 F.3d 1303 (10th Cir. 2018) ............................................................................................ 8

*Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*,
  654 F.3d 1073 (10th Cir. 2011) ........................................................................................ 8, 9

*Montgomery v. City of Ardmore*,
  365 F.3d 926 (10th Cir. 2004) .............................................................................................. 7

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................................................. 8

*Oxendine v. Kaplan*,
  241 F.3d 1272 (10th Cir. 2001) ............................................................................................ 3

*Powell v. Mikulecky*,
  891 F.2d 1454 (10th Cir. 1989) ........................................................................................ 8, 9

*Riggins v. Goodman*,
  572 F.3d 1101 (10th Cir. 2009) ............................................................................................ 9

*Seibert v. Univ. of,*
  Okla., 867 F.2d 591 (10th Cir. 1989) ................................................................................... 8

*West v. Grand Cnty.*,
  967 F.2d 362 (10th Cir. 1992) ........................................................................................ 8, 9

*Zimmerman v. University of Utah*,
  2018 UT 1, 417 P.3d 78 ......................................................................................... 11, 12, 13

**Statutes**

42 U.S.C. § 1983 ................................................................................................................... 1
Utah Code Ann. § 67-19a-101(11) ................................................................................ 12, 13
Utah Code Ann. § 67-21-4(1)(a) ....................................................................................... 11
Utah Code Ann. § 67-21-2(14) .......................................................................................... 12
§ 67-21-3.6 ........................................................................................................................ 13
§ 67-21-4(1)(d) .................................................................................................................. 11
§ 67-21-4(1)(b)(i)(A) ......................................................................................................... 13
§ 67-21-4(1)(b)(i) .............................................................................................................. 13

**Rules**

DUCivR 7-1 ......................................................................................................................... i
Fed. R. Civ. P. 10(c) ........................................................................................................... 3
Federal Rule of Civil Procedure 12(b)(6) ....................................................................... i, 2

**BACKGROUND**

Plaintiff was employed with the Tooele County School District as an educator for several years. Plaintiff's allegations arise out her dissatisfaction when the District did not select her for a Literacy Coach position in September 2023. After Plaintiff applied for—and was not selected to fill—the Literacy Coach position, she filed a formal grievance with the District. During this time, Plaintiff openly disrespected the individual that had been hired for the Literacy Coach position, which contributed to an environment of hostility and incivility. Plaintiff later escalated her workplace complaints to social media. The District found that Plaintiff violated multiple District policies due to unprofessionalism, bullying, and harassing behavior toward a colleague. As a result, she was terminated from her position with the District on May 22, 2024.

After pursuing an appeal of her termination, and nearly one year after her termination date, Plaintiff brought this lawsuit. In Plaintiff's Amended Complaint, she alleges 1) violation of procedural due process under 42 U.S.C. § 1983; 2) First Amendment retaliation under 42 U.S.C. § 1983; and 3) whistleblower retaliation under the Utah Protection of Public Employees Act ("UPPEA"). The District now seeks dismissal of Plaintiff's First and Third Causes of Action.

Plaintiff's First Cause of Action—for violation of procedural due process under 42 U.S.C. § 1983—must be dismissed because Plaintiff's Amended Complaint reflects that she was given sufficient notice and opportunity to respond, satisfying constitutional due process requirements. Additionally, Plaintiff's allegations that the District violated its own policies do nothing to plausibly allege a constitutional deprivation of due process. Plaintiff's Third Cause of Action—for whistleblower retaliation under the UPPEA—must be dismissed because Plaintiff's claim is barred by the 180-day statute of limitations contained within the UPPEA. Dismissal of these claims with prejudice is appropriate for the reasons argued below.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that the Court may dismiss any claim that "fail[s] to state a claim upon which relief can be granted." When considering a motion to dismiss, the Court views the complaint in a light most favorable to the plaintiff. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). Nevertheless, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, a complaint must allege "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and it must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must give a defendant "fair notice of what the claim is . . . and the grounds upon which it rests." *Id.* (quotations and citation omitted) (alteration in original).

In determining the adequacy of a complaint, the court should engage in a two-part process. First, the court should identify allegations that, because they "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Second, after excluding conclusory assertions, the court then assumes the veracity of well-pleaded allegations and determines whether they plausibly give rise to an entitlement to relief. *Id.* Rule 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance some facts might exist which could support a plausible claim.

Finally, this circuit considers both the complaint, and the documents attached to the complaint when ruling on a motion to dismiss. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). Thus, courts should take into account the documents attached to Plaintiff's complaint as well as the content of the complaint itself when ruling on the motion.

## PLAINTIFF'S ALLEGATIONS[1]

1. Plaintiff was employed by the District as an educator. Am. Compl., ¶ 8 (ECF No. 26).

2. In September 2023, the District posted a position for a Literacy Coach at Stansbury Elementary School. Am. Compl., ¶ 19.

3. Multiple candidates applied for the position, including Plaintiff. Am. Compl., ¶ 21.

4. The District hired a different candidate, Madison Wallace, for the position. Am. Compl., ¶ 23.

5. Plaintiff contends that Ms. Wallace did not meet the minimum qualifications for the position. Am. Compl., ¶ 22.

6. On September 18, 2023, upon learning of the hiring process, Plaintiff went to the Principal and Vice Principal of Sterling Elementary (her own school) and reported alleged policy violations to them. Am. Compl., ¶ 25.

7. Plaintiff alleges she also raised her concerns about the hiring process/policy violations to administrators for the District. Am. Compl., ¶ 27.

---

[1] Plaintiff's Allegations contain factual allegations asserted within Plaintiff's Amended Complaint that are considered true only for purposes of this Motion and, by stating them here, TCSD does not waive, and specifically preserves, its right to later deny that any facts so asserted actually support the allegations contained in the same.

8. On September 25, 2023, her Principal at Sterling Elementary issued Plaintiff a Letter of Concern in violation of District Policy 4037(B). Am. Compl., ¶¶ 28, 30.

9. The Letter of Concern addressed Plaintiff's unprofessionalism with the literacy team. Am. Compl., Exh. E, (Letter of Concern) at 1 (p. 99) (ECF No. 26).

10. Specifically, the letter stated:

    It was reported that on September 7th and 8th you entered the Literacy Intervention room multiple times to instruct the intervention aides that they did not need to complete the progress monitoring binders as they had been directed to. This direction is not within your scope to override as you are not a supervisor….

    [and]

    It has been reported that you, along with other grade-level team members, consistently interrupt the literacy teams meeting time. To a degree that they feel locking their door is necessary during that time…

    Exh. E, at 1 (p. 99).

11. Plaintiff alleges that issuing the Letter of Concern violated the District's discipline policy because Plaintiff did not have a preliminary verbal discussion prior to the issuance of the Letter of Concern. Am. Compl., ¶ 29.

12. Plaintiff submitted a rebuttal to the Letter of Concern. Am. Compl., ¶ 32.

13. In October 2023, Plaintiff filed a grievance challenging the alleged hiring violations. Am. Compl., ¶ 33.

14. The grievance asked that "Madison Wallace be replaced in the position of literacy coach…. There are other applicants qualified for the position currently employed by TCSD." Am. Compl., Exh. D, (Grievance) at 11 (p. 97) (ECF No. 26).

15. Plaintiff received informal conferences, superintendent review, and a grievance hearing to address her grievance. Am. Compl., ¶ 39.

16. Plaintiff received an "ineffective" evaluation score in November 2023, which was later changed to a score of "effective." Am. Compl., ¶¶ 35–36; Exh. A, (Notice of Claim) at 1-2 (p. 19-20) (ECF No. 26).

17. In April 2024, the School Board approved hiring the literacy coach. Am. Compl., ¶ 41.

18. In May 2024, Plaintiff used her personal social media account to express concerns about this hiring process. Am. Compl., ¶¶ 43, 45–49.

19. On May 14, 2024, the District met with Plaintiff and placed her on administrative leave. Am. Compl., ¶ 55, 75.

20. On May 22, 2024, the District terminated Plaintiff's employment, effective June 22, 2024. Am. Compl., ¶ 56; Exh. A, at 2 (p. 20).

21. Plaintiff's termination letter identified accusations of "bullying and creating a hostile work environment" and Plaintiff's social medial posts. Am. Compl., ¶¶ 56-57; Exh. G (Notice of Termination) (ECF No. 26).

22. Plaintiff's termination letter accused her of violating the following District policies:

    a. TCSD Policy 4011.F.8, for conduct which may be harmful to students or the district;

    b. TCSD Policy 4011.F.13, for unsatisfactory performance, attitude, or other employment attributes substantially below that reasonably expected from a similarly situated employee;

    c. TCSD Policy 4027.G.3, for airing grievances about other employees on social media;

    d. TCSD Policy 4030.B.2, for bullying a school employee in circumstances reasonably foreseeable to cause physical or emotional harm to the employee or creating a hostile, threatening, humiliating, or abusive educational environment;

    e. TCSD Policy 4030.B.5, for cyber-bullying;

    f. TCSD Policy 4030.B.6, for harassment; and

    g. TCSD Policy 4037.B, for unprofessional conduct.

Am. Compl., Exh. G, at 1-2 (p. 108-109).

23. Plaintiff appealed her termination, and a hearing was held in August or September 2024.[1] Am. Compl., ¶ 62; Exh. A, at 2 (p. 20).

24. On September 25, 2024, Plaintiff's appeal was denied. Exh. A, at 2 ¶ 3 (p. 20).

25. In October 2024, Adams requested the School Board review and overturn the decision of the hearing officer. Am. Compl., ¶ 63.

26. The School Board denied Plaintiff's request on October 28, 2024. Am. Compl., ¶ 64.

27. Plaintiff filed a Verified Complaint in Utah state court on April 23, 2025. Not. of Removal, Exh. 3 (Verified Complaint) (ECF No. 1-3).

28. The case was removed to federal court on or about June 2, 2025. (ECF No. 1.)

## ARGUMENT

Plaintiff's First Cause of Action must be dismissed because Plaintiff has not plausibly alleged any due process violation arising from her employment termination. This is for two reasons: first, she was afforded notice and an opportunity to respond, and second, her allegations of District policy violations are insufficient to establish a violation of her constitutional rights.

Additionally, Plaintiff's Third Cause of Action must be dismissed because her claim is untimely. Her UPPEA claim was not filed within 180 days of her termination from employment,

---

[1] There is a discrepancy between two of Plaintiff's allegations: Plaintiff's Notice of Claim alleges August 22-23, 2024 hearing dates, but the Amended Complaint claims the hearing occurred on September 25, 2024.

which places her cause of action outside the statute of limitations. These arguments are addressed in turn below.

## I. PLAINTIFF HAS NO PLAUSIBLE DUE PROCESS CLAIM.

Plaintiff has not alleged facts to support a plausible due process violation under the U.S. Constitution.

Procedural due process requires that an employee be given pretermination process including "(1) 'oral or written notice [to the employee] of the charges against him;' (2) 'an explanation of the employer's evidence and [3] an opportunity [for the employee] to present his side of the story.'" *Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). The pretermination process does not need to be rigorous: "Because it is followed by post-termination proceedings, the pre-termination hearing is not meant to resolve definitively the propriety of the discharge, but only to determine whether there are reasonable grounds to believe the charges are true and the action is correct." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 627 (10th Cir. 1996).

Indeed, the Supreme Court has concluded that a public employee dismissible for cause is only entitled to a limited process prior to termination, to be followed by a more comprehensive post-termination hearing. *See Loudermill,* 470 U.S. at 545–58 ("We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures …"). Plaintiff's allegations indicate that she received both notice and an opportunity to be heard prior to dismissal. Therefore, Plaintiff has not alleged a violation of due process, and her claim must be dismissed.

### A. Plaintiff Was Given Sufficient Notice.

Notice of the charges against an employee is adequate as long as it informs the employee "that his employment is in jeopardy." *Calhoun v. Gaines*, 982 F.2d 1470, 1476 (10th Cir. 1992). In

other words, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1312 (10th Cir. 2018) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Hulen v. Yates*, 322 F.3d 1229, 1248 (10th Cir. 2003) ("Applying *Loudermill* to claims of denial of pre-termination procedural rights, this circuit has required only the core of notice and an opportunity to be heard"); *see also Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1078 (10th Cir. 2011) ("An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case") (quoting *Loudermill*, 470 U.S. at 542).Indeed, the Tenth Circuit has found this low standard met where there was a brief face-to-face meeting with a supervisor or a conversation between an employee and his supervisor immediately before the employee's termination. *West v. Grand Cnty.*, 967 F.2d 362, 367 (10th Cir. 1992) (citing *Seibert v. Univ. of Okla.*, 867 F.2d 591, 596-99 (10th Cir. 1989) and *Powell v. Mikulecky*, 891 F.2d 1454, 1462 (10th Cir. 1989).

Here, Plaintiff received much more than the constitutional floor of pre-termination due process: she received a letter of concern, submitted a rebuttal to the letter of concern, was notified of allegations of bullying and of creating a hostile work environment, received a pre-termination investigation, and attended a meeting with District administrators in order to convey her responses to the allegations. Am. Compl. ¶¶ 28, 32; Exh. A, at 2 ¶ 3 (p. 20); Exh. G, at 1 (p. 108). These actions put Plaintiff on notice that her employment was in jeopardy, apprised her of the pendency of the action, and afforded her an opportunity to present objections. Thus, she cannot plausibly allege that she did not receive adequate notice prior to her termination.

Plaintiff also alleges the District's notice of termination was inadequate because the District "failed to address the systemic context of the violations she had reported." Am. Compl., ¶ 74. But

8

due process does not require any such admission, and counsel could find no court opinion holding notice insufficient on this basis. Therefore, Plaintiff has not and cannot plausibly allege that her notice was inadequate under the requirements of 14th amendment due process.

### B. Plaintiff Was Given Sufficient Opportunity to Respond Prior to Her Termination.

An opportunity to respond is sufficient if "appropriate to the nature of the case." *Merrifield*, 654 F.3d at 1078 As with notice, courts have upheld a variety of informal interactions as constitutionally sufficient, such as "pretermination warnings," "an opportunity for a face-to-face meeting with supervisors," and "even a limited conversation between an employee and his supervisor immediately prior to the employee's termination." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009).

In *West v. Grant County*, for example, pre-termination process was found sufficient when the totality of the circumstances indicated that the plaintiff knew in advance of their termination that their employer proposed to eliminate their job and the plaintiff had a pretermination opportunity to discuss their potential termination with the employer. 967 F.2d at 368 ("[T]he totality of the procedures and opportunities which the [employer] afforded plaintiff were sufficient to satisfy constitutional requirements. Plaintiff was not fired out of the blue. Plaintiff was not fired for reasons that [she] did not know. Plaintiff was not fired without being given the opportunity to present his side of the story") (internal quotation marks omitted). Pretermination process was even found to be adequate when an employee was terminated *during* a meeting in which he was asked about allegations of misconduct. *Powell*, 891 F.2d at 1459.

Plaintiff was given an opportunity to respond. In its Notice of Termination for Cause, the District referenced a meeting with Plaintiff on May 14, 2024, held as part of its investigation into the allegations against her. Am. Compl., ¶ 10. Specifically, the meeting was conducted "to hear what responses [Plaintiff] had to the allegations." Am. Compl., Exh. G, at 1 (p. 108). The District

9

then compared Plaintiff's testimony to the evidence obtained in the investigation and the testimony of "various witnesses." *Id.* Only after this process did the District terminate Plaintiff's employment on May 22, 2024.

Plaintiff claims she was given an inadequate opportunity to respond to the allegations against her because this May 14th meeting took place after the decision to put her on administrative leave had already been made. Am. Compl., ECF No. 26, ¶ 75. But the timing of the decision to place her on administrative leave is immaterial to her claim. Instead, whether she had an opportunity to be heard before her *termination* is what matters.

Plaintiff's allegations demonstrate that she had an opportunity to meet with the District prior to her termination; thus, she received sufficient process under 10th Circuit case law. Plaintiff was offered an opportunity on May 14 to meet with District administrators to discuss the allegations made against her. Am. Compl., Exh. A, at 2 ¶ 3 (p. 20), Exh. G, at 1 (p. 108). Plaintiff responded to the allegations, and her testimony was considered by the District as part of its investigation into her policy violations prior to her termination. Exh. G, at 1 (p. 108). Considering that even a limited conversation between an employee and his supervisor immediately prior to the employee's termination can be a constitutionally sufficient opportunity to respond, Plaintiff cannot plausibly allege that the minimum constitutional requirement was not met here.

### C. The District Was Not Required to Follow Its Own Policies to Satisfy Federal Due Process.

Plaintiff alternatively argues that she was given insufficient due process because the District violated its own policies in accelerating its disciplinary process. But "even in the disciplinary context, a school's failure to comply with its own rules 'does not, in itself, constitute a violation of the Fourteenth Amendment.'" *Brown v. Univ. of Kansas*, 599 F. App'x 833, 838 (10th Cir. 2015) (quoting *Hill v. Trs. of Ind. Univ.*, 537 F.2d 248, 252 (7th Cir. 1976)). Therefore, whether

10

the District violated its own policies during Plaintiff's termination process is irrelevant to the plausibility analysis of Plaintiff's federal due process claim. Plaintiff's alternative argument is therefore insufficient to plead any constitutional inadequacy.

Accordingly, Plaintiff's allegations do not meet the plausibility standard for her due process claim and this claim must be dismissed with prejudice pursuant to Rule (12)(b)(6).

## II. PLAINTIFF'S UPPEA CLAIM IS UNTIMELY.

Plaintiff's Third Cause of Action for whistleblower retaliation under the UPPEA is untimely, as the claim was filed well beyond the statute of limitations. Plaintiff's reliance on *Zimmerman v. University of Utah*, 2018 UT 1, 417 P.3d 78, is unfounded and contrary to the holding in that case. Plaintiff also cannot plausibly allege a retaliatory action arising any later than the effective date of her termination, which was June 22, 2024. Lastly, Plaintiff reads an administrative exhaustion safe harbor into the UPPEA that does not exist.

Under the UPPEA, an employee must bring her claim "within 180 days after the occurrence of the alleged violation" of the UPPEA. Utah Code Ann. § 67-21-4(1)(a). There is no tolling provision in the UPPEA that permits an employee to file her whistleblower retaliation claim for the first time at a later date. *See* § 67-21-4(1)(d); *see Davis v. Utah,* No. 2:18-CV-00926-TS, 2021 WL 3930277 (10th Cir. Sept. 2, 2021) (confirming that there is no tolling provision in § 67-21-4(1)(a)). Indeed, the only explicit tolling provision in the plain language of the UPPEA statute involves specific situations where the initial action was filed timely but failed or was dismissed for reasons other than on the merits. *Id.* § 67-21-4(1)(d). Those circumstances do not exist here.

Plaintiff received notice of her termination on May 22, 2024, with an effective date of June 22, 2024. Am. Compl., ¶ 56 (ECF No. 26); Exh. A, at 2 ¶ 3 (p. 20). In contrast, Plaintiff filed her UPPEA claim for the first time on April 23, 2025, nearly one year later. *See* Not. of Removal, Exh. 3 (Verified Complaint) (ECF No. 1-3). Even if the time began to run on the date the termination

11

was effective, Plaintiff would still be outside the statute of limitations. Plaintiff's termination was effective on June 22, 2024—305 days before Plaintiff filed her UPPEA claim. This far exceeds the 180-day statute of limitations, and Plaintiff's claim must be dismissed with prejudice.

### A.  Neither *Zimmerman* Nor the UPPEA Supports Plaintiff's Claim.

Plaintiff's Amended Complaint incorrectly alleges that the 180-day filing period for a UPPEA claim runs from the final administrative decision rather than the initial adverse action. Am. Compl., ¶ 114. Plaintiff relies on *Zimmerman*[1] in doing so. This allegation mischaracterizes the holding of *Zimmerman*.

The *Zimmerman* opinion explicitly states that the date of the controlling adverse employment action for calculating the statute of limitations period is determined by considering "whether and to what extent the employee is seeking damages arising out of one or the other of these actions." 2018 UT 1, ¶ 30.[2] Thus, where Plaintiff only seeks damages allegedly suffered as a result of her May 2024 notice of termination or her effective date of termination in June 2024, Plaintiff's claim is time-barred. *Id.* ¶ 32.

Plaintiff also cannot plausibly allege a whistleblower claim based on her termination appeals under the plain language of the statute. This is because the UPPEA's definition of "retaliatory action" does not include termination appeals or reviews of such appeals. Utah Code Ann. § 67-21-2(14); § 67-19a-101(11).

---

[1] While Plaintiff references *Zimmerman* by name, she cites *Hatch v. Davis*. Because the filing period for a UPPEA claim is not discussed in *Hatch*, it is assumed that Plaintiff meant to cite *Zimmerman*.

[2] *Zimmerman* also analyzed an older version of the UPPEA that defined "adverse action" broadly – in contrast, the modern version has eliminated this definition and now refers only to "retaliatory action." This demonstrates the legislature's intent in limiting the UPPEA to these narrow categories of retaliation.

12

Even if Plaintiff were to make such a claim, nowhere in the UPPEA (or *Zimmerman*) does it state that a UPPEA claim can arise from upholding an employee's termination on appeal or denying an employee's request to review that decision. Rather, the statute contains a limited definition of what constitutes a retaliatory action. § 67-19a-101(11) ("retaliatory action" includes a dismissal, reduction in pay, failure to increase pay, failure to promote, or a threat to do any of these things). Likewise, the *Zimmerman* decision demonstrates that either "a threat of termination" or "an actual termination" are the retaliatory actions that trigger a UPPEA claim in the termination context. *Id.* ¶ 31.

Thus, in this case, the last alleged retaliatory act occurred no later than the effective date of Plaintiff's termination, which was June 22, 2024. The limitations period for her UPPEA claim began to run on this date, making Plaintiff's filing on April 23, 2025, untimely by 125 days.

### B. The District Has No UPPEA Policy to Toll Plaintiff's Claim.

Lastly, Plaintiff's reference to administrative exhaustion is inconsequential. The UPPEA permits an employee of a political subdivision to bring a civil action "within 180 days after the day which the employee has exhausted administrative remedies," § 67-21-4(1)(b)(i)(A), but this provision is explicitly tied to situations where the political subdivision has elected to adopt its own whistleblower policy and procedure that meets the requirements of the statute. § 67-21-4(1)(b)(i); § 67-21-3.6 (describing the minimum requirements for a local whistleblower ordinance, including an independent personnel review board, procedures for filing a whistleblower complaint, procedures for conducting hearings, and remedies authorized).

There is no such whistleblower ordinance or process for District employees and, thus, the exhaustion of Plaintiff's post-termination appeal process does not toll the limitations period for, or otherwise preserve, Plaintiff's UPPEA claim. Because Plaintiff has filed this claim well outside the bounds of the statute of limitations, Plaintiff's UPPEA claim must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the District respectfully requests that this Court grant this Partial Motion to Dismiss and dismiss Plaintiff's First and Third Causes of Action with prejudice.

RESPECTFULLY SUBMITTED THIS 24th day of October, 2025.

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ *Katherine Bushman*
KATHERINE B. BUSHMAN
Assistant Utah Attorney General
*Attorney for Tooele County School District*

14