UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| AYANA ADAMS,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>TOOELE COUNTY SCHOOL DISTRICT,<br><br>　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [31] DEFENDANT'S PARTIAL MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00438-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendant Tooele County School District's (the "District") Partial Motion to Dismiss Plaintiff Ayana Adams's ("Ms. Adams") Amended Complaint.[1] For the reasons below, the court grants in part the District's motion to dismiss Ms. Adams's procedural due process and Utah Protection of Public Employees Act ("UPPEA") claims.[2]

## BACKGROUND

In 2005, Ms. Adams began her employment with the District as an educator at Sterling Elementary School.[3] Ms. Adams had no disciplinary actions or performance issues in her personnel record prior to 2024.[4]

In September 2023, a literacy coach position opened at Stansbury Elementary School in the District and multiple candidates, including Ms. Adams and another candidate who also had fifteen years of experience, applied.[5] The District hired a candidate who had two years of

---

[1] Def.'s Partial Mot. to Dismiss ("Motion"), ECF No. 31, filed Oct. 24, 2025.
[2] Defendant does not challenge the First Amendment retaliation claim. *See* Motion 1.
[3] Am. Compl. ¶ 8, ECF No. 26, filed Sept. 30, 2025.
[4] *Id.* ¶ 9.
[5] *Id.* ¶¶ 19, 21.

experience and allegedly did not meet all the minimum qualifications for the position.[6] On September 18, 2023, Ms. Adams reported policy violations she believed had occurred in the hiring process of the literacy coach to the principal and vice principal she worked with at Sterling Elementary School.[7] Ms. Adams also reported her concerns about the hiring process to the District's administrators.[8]

The principal issued Ms. Adams a letter of concern the following week.[9] The letter addressed Ms. Adams's unprofessionalism with the literacy team.[10] Specifically, the letter stated in relevant part:

> It was reported that on September 7th and 8th you entered the Literacy Intervention room multiple times to instruct the intervention aides that they did not need to complete the progress monitoring binders as they had been directed to. This direction is not within your scope to override as you are not a supervisor. When offered an explanation for the binders and a chance to see them, you stated, 'I don't want to see them' and then left.
>
> It has also been reported that you, along with other grade-level team members, consistently interrupt the literacy teams meeting time. [sic] To a degree that they feel locking their door is necessary during that time.[11]

In response, Ms. Adams submitted a rebuttal and filed a formal grievance under District Policy 4012 to challenge the hiring process.[12] The District responded with informal conferences, superintendent review, and a grievance hearing.[13] For the first time in her employment with the

---

[6] *Id.* ¶¶ 21–23.
[7] *Id.* ¶ 25.
[8] *Id.* ¶ 27.
[9] *Id.* ¶¶ 28–29.
[10] Am. Compl. ¶ 30; Motion ¶ 9.
[11] Motion ¶ 10; Ex. E at 1.
[12] Am. Compl. ¶¶ 32–33.
[13] *Id.* ¶ 39.

District, Ms. Adams received an "ineffective" evaluation score.[14] After she challenged the score, the District changed it to "effective."[15]

After the District approved the hiring of the new literacy coach, Ms. Adams aired her concerns about the hiring process on her personal social media account.[16] She posted frustration about the District's "personnel decisions" and alleged that "some candidates being voted on were not hired following district policy or the union-negotiated agreement, nor did they meet the minimum job qualifications required for their position."[17] Ms. Adams also posted, "Will ANYONE be held accountable??? . . . After going through the grievance process, it has become clear that I am not the only one who is frustrated by the lack of accountability in our school system. Yet, there is A LOT of fear associated with disagreeing."[18]

On May 14, 2024, the District met with Ms. Adams and placed her on administrative leave.[19] On May 22, 2024, the District terminated Ms. Adams's employment with an effective date of June 22, 2024.[20] The termination letter referenced Ms. Adams's social media posts as well as accusations made against her of "bullying and creating a hostile work environment."[21] The termination letter outlined the District policies Ms. Adams had allegedly violated:

- 4011.F.8, for "[c]onduct which may be harmful to students or the district;
- 4011.F.13, for "[u]nsatisfactory performance, attitude, or other employment attributes substantially below that reasonably expected from a similarly situated employee;
- 4027.G.3, for "airing grievances about other employees" on social media;

---

[14] Am. Compl. ¶¶ 35–36, Ex. A at 1–2.
[15] Id. ¶ 36–51; Motion ¶ 16.
[16] Am. Compl. ¶¶ 43–44, Ex. G; Motion ¶ 21.
[17] Ex. F at 1.
[18] Id.
[19] Am. Compl. ¶ 55; Motion ¶ 19.
[20] Am. Compl. ¶ 56; Motion ¶ 20.
[21] Ex. G at 1–2.

- 4030.B.2, for bullying a school employee in circumstances reasonably foreseeable to cause "physical or emotional harm to the school employee" or "a hostile, threatening, humiliating, or abusive educational environment;
- 4030.B.5, for cyber-bullying;
- 4030.B.6, for harassment;
- 4037.B: for unprofessional conduct[22]

Ms. Adams appealed her termination and a hearing was held.[23] On September 25, 2024, the District denied her appeal.[24] On October 3, 2024, Ms. Adams requested that the District's School Board review the denial and overturn her dismissal.[25] On October 28, 2024, the District's School Board issued a final decision, denying the request.[26] On April 23, 2025, Ms. Adams filed a complaint in the Third District Court of Utah, and the case was removed to federal court.[27]

## STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."[28] A complaint that falls short of this standard may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[29] "In evaluating a motion to dismiss, the court must take as

---

[22] *Id.*
[23] Am. Compl. ¶ 62. Plaintiff's Notice of Claim alleges the hearing was held August 22 or 23, 2024, but her Amended Complaint states it was held on September 25, 2024. *Compare* Am. Compl. ¶ 62 *with* Ex. A at 2.
[24] Motion ¶ 24.
[25] Am. Compl. ¶ 63; Motion ¶ 25.
[26] Am. Compl. ¶ 64; Motion ¶ 26.
[27] Motion ¶¶ 27–28; Notice of Removal, ECF No. 1, filed June 2, 2025.
[28] Fed. R. Civ. P. 8(a)(2).
[29] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)). *See also* Fed. R. Civ. P. 12(b)(6).

true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[30]

However, a "complaint cannot rely on labels or conclusory allegations—a 'formulaic recitation of the elements of a cause of action will not do.'"[31] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[32] "When analyzing plausibility, plaintiff's allegations are 'read in the context of the entire complaint' and a plaintiff need only 'nudge' their claim 'across the line from conceivable to plausible.'"[33]

## DISCUSSION

Ms. Adams brings two claims that the District has moved to dismiss.[34] She alleges the District violated her procedural due process rights under § 1983 and committed whistleblower retaliation against her under the UPPEA.[35] In response, the District asserts that Ms. Adams was given sufficient notice and opportunity to satisfy her procedural due process rights and that her UPPEA claim is time-barred.[36] The court first addresses the procedural due process claim and then turns to the UPPEA claim.

---

[30] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1131 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).
[31] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521 (2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[33] *Greer*, 83 F.4th at 1292 (quoting *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022)) (also quoting *Twombly*, 550 U.S. at 570) (cleaned up).
[34] As mentioned in n.2, the District does not seek to dismiss Ms. Adams's First Amendment retaliation claim.
[35] Am. Compl. ¶¶ 87–94, 106–115. *See also* 42 U.S.C. § 1983; Utah Code §§ 67-21-3, 67-21-4.
[36] Motion 1.

I.  **Ms. Adams Has Not Demonstrated a Plausible Due Process Claim.**

Defendants argue that Ms. Adams has not alleged facts to support a plausible due process violation under the U.S. Constitution.[37] In response, Ms. Adams does not deny that she had notice and opportunity to respond, but she alleges they were constitutionally insufficient.[38]

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[39] The District does not dispute that Ms. Adams enjoyed a protected property interest in her employment.[40] Thus, the "only question is the level of process to which [s]he was entitled to protect that property interest."[41]

The foundational Supreme Court case on due process in the public employment context is *Cleveland Board of Education v. Loudermill*.[42] The court in *Loudermill* held that "[a]n essential principle of due process is that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"[43] "Public employees with a property interest in continued employment are 'entitled to oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story' prior to termination."[44] This pre-termination process is more limited than post-

---

[37] *Id.* at 7.
[38] Pl.'s Resp. to Def.'s Partial Mot. to Dismiss 6–10 ("Response"), ECF No. 32, filed Nov. 21, 2025.
[39] *Riggins v. Goodman*, 572 F.3d 1101, 1108 (internal quotation marks omitted) (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004).
[40] Motion 7.
[41] *Id.*
[42] 470 U.S. 532 (1985).
[43] *Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).
[44] *Harrell v. Stitt*, No. 23-6048, 2024 WL 3372624, at *3 (10th Cir. 2024) (quoting *Loudermill*, 470 U.S. at 546).

termination and "need not be elaborate" so long as the employee "be made aware that his employment is in jeopardy of termination."[45]

### A. Ms. Adams Received Sufficient Notice.

Ms. Adams alleges she did not receive sufficient notice because she saw only some of the exhibits supporting her termination at the pretermination meeting, which allegedly left her with only "a vague awareness of dissatisfaction" rather than the actual basis for her termination.[46]

The Supreme Court and Tenth Circuit have long held that "[a] full evidentiary hearing is not required prior to an adverse employment action."[47] Rather, the "individual entitled to due process protection needs only to be given notice and an opportunity to respond."[48] And the notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[49] Essentially, a pretermination hearing is "an initial check against mistaken decisions."[50]

Here, Ms. Adams has not met her burden to plausibly establish she did not receive constitutionally sound pre-termination due process. It is not enough to assert that receiving a minority of the exhibits eventually used against her violated due process when, as noted above,

---

[45] *Calhoun v. Gaines*, 982 F.2d 1470, 1476 (10th Cir. 1992); *Gardner v. City of Riverton, Wyo.*, 529 F. Supp. 3d 1268, 1277 (10th Cir. 2021) ("The U.S. Supreme Court has 'concluded that a public employee dismissable only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing.'") (quoting *Gilbert v. Homar*, 520 U.S. 924, 929 (1997)).
[46] Response 6–7.
[47] *West v. Grand Cnty.*, 967 F.2d 362, 367 (10th Cir. 1992); *Loudermill*, 470 U.S. at 545.
[48] *West*, 967 F.2d at 367. *See also Merrifield v. Bd. of Cnty. Comm'rs for Santa Fe*, 654 F.3d 1073, 1078 (10th Cir. 2011) (concluding that "it suffices that the employee is given notice and an opportunity to respond") (cleaned up).
[49] *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1312 (10th Cir. 2018) (internal quotation marks omitted) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).
[50] *Loudermill*, 470 U.S. at 545–46.

she was not entitled to a full evidentiary hearing before termination.[51] Granted, she was entitled to "an explanation of the employer's evidence" against her, but Ms. Adams does not articulate how the undisclosed exhibits interfered with that right.[52] The law does not require a certain percentage of evidence to be offered pre-termination, but Ms. Adams's reasoning suggests as much because she offers no details about the exhibits other than how many were and were not disclosed pre-termination.[53] For example, she does not allege that the undisclosed exhibits presented different charges to which she could not meaningfully respond, nor did she claim she was unaware of the purpose behind her pretermination meeting because of the undisclosed exhibits.[54] Moreover, Ms. Adams does not dispute that the District provided her a letter of concern that notified her of allegations of bullying and creating a hostile work environment.[55] Ms. Adams had the opportunity to rebut the letter of concern. A pre-termination investigation was conducted, and a meeting with District administrators was held where she could respond to the allegations. Accordingly, Ms. Adams received notice her employment was at risk, she had opportunities to object, and she was kept apprised of the pendency of the action.[56] Therefore, Ms. Adams's pre-termination notice did not violate her procedural due process rights.

### B. Ms. Adams Received Sufficient Opportunity to Respond Pre-Termination.

Next, Ms. Adams argues her opportunity to respond was insufficient because she had already been placed on administrative leave when she met with the District administrators on

---

[51] *See Loudermill*, 470 U.S. at 545; *West*, 967 F.2d at 367; *Merrifield*, 654 F.3d at 1078.
[52] *See Loudermill*, 470 U.S. at 546.
[53] Opp'n 7–8; Compl., Ex. A at 3.
[54] *Id.*
[55] *See* Ex. E.
[56] *See M.A.K.*, 897 F.3d at 1312.

May 14, 2024, and the "mere eight days" between that meeting and her termination signifies the process was pretextual.[57]

Procedural due process in the job-termination context does not require a certain amount of time between its elements. "Nothing in *Loudermill* suggests, nor do we hold, that . . . in conducting the pretermination hearing, there must be a delay between the 'notice' and the 'opportunity to respond' accorded to the public employee."[58] And in the Tenth Circuit, "[t]he necessary notice may come at the hearing itself."[59] "Given the benchmarks established by *Loudermill* and the Tenth Circuit cases that followed," "pretermination warnings and an opportunity for a face-to-face meeting with supervisors" are deemed "constitutionally sufficient in the job-termination context" regardless of their temporal proximity.[60]

It is undisputed that Ms. Adams met with the District's administrators on May 14, 2024, to respond to the allegations against her.[61] The fact that she already had been placed on administrative leave by the time of that meeting is irrelevant to her due process claim.[62] What matters is that the meeting provided her with the requisite "opportunity to present [her] objections."[63]

---

[57] Response 7.
[58] *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989).
[59] *Merrifield*, 654 F.3d at 1078. *See also Riggins*, 572 F.3d at 1109 (discussing *Powell*, 891 F.2d at 1459, in which the court held that a pretermination process was constitutionally sound "when an employee was terminated during a meeting after he was asked and admitted to having had unauthorized communications").
[60] *Hulen v. Yates*, 322 F.3d 1229, 1248 (10th Cir. 2003).
[61] Am. Compl. ¶ 10, Ex. G at 1.
[62] *See, e.g.*, *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1221 (D. Colo. Aug. 5, 2011) (holding that because the plaintiff was paid during her administrative leave, "she was not deprived of any constitutionally cognizable property interest"). *Cf. Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1191 (10th Cir. 2006) ("assum[ing], without deciding, that a government employee's suspension *without* pay amounts to a deprivation triggering some degree of due process protections").
[63] *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1312 (10th Cir. 2018) (quoting *Mulland v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In sum, the District did not violate Ms. Adams's procedural due process rights because she was provided sufficient notice of the charges against her and an adequate opportunity to respond to those charges prior to her termination.[64]

## II.  Ms. Adams's UPPEA Claim Is Time-Barred.

Defendants contend Ms. Adams's UPPEA claim is untimely because it was filed after the statute of limitations expired.[65] In response, Ms. Adams argues the clock did not start running on her claim until her appeal process with the District ended.[66]

The UPPEA is a whistleblower statute that prohibits government employers from taking "retaliatory action against an employee because the employee . . . communicates in good faith . . . the waste or misuse of public funds, property or manpower . . . a violation or suspected violation of a law [or] . . . gross mismanagement; abuse of authority; or unethical conduct."[67]

The UPPEA provides "two potential limitations periods."[68] Typically, the UPPEA requires an employee to bring a retaliation claim "within 180 days after the occurrence of the alleged violation" of the statute.[69] The statute defines "retaliatory action" in an enumerated list of acts that occur during—not after—employment: dismissal, reduction in compensation, failure to increase compensation, failure to promote employee, or the threat of these acts.[70] Post-termination appeals or review decisions are not included in this list. The UPPEA's second

---

[64] Ms. Adams also seems to challenge her post-termination process. *See* Opp'n 10. She appears to argue that it was impermissible for the school board to preside over her post-termination appeal because school district officials and administrators were involved in retaliatory conduct. She offers a block cite to 40 paragraphs of her complaint with no further explanation. This is insufficient to meet *Iqbal/Twombly*'s plausibility standard. And the court will not make an argument for a litigant.
[65] Motion 11–13.
[66] Opp'n 10–12.
[67] Utah Code Ann. § 67-21-3(1)(a).
[68] *Nelson v. Salt Lake Cnty.*, 2022 WL 957597, at *4 (D. Utah Mar. 30, 2022).
[69] Utah Code Ann. § 67-21-4(1)(a). Utah Code Ann. § 67-21-1 to § 67-21-10.
[70] *Id.* §§ 67-21-2(14), 67-19a-101(11).

limitations period applies if "a political subdivision of the state adopts an ordinance establishing an independent personnel board."[71] An employee in that situation must first exhaust her administrative remedies before such a board before filing a claim.[72] Consequently, the 180-day limitations period runs "after the day on which the employee has exhausted administrative remedies."[73]

    A.    **The First Limitations Period Bars Ms. Adams's Claim.**

Ms. Adams presents rationales as to why her claim is timely under either limitations period.[74] She argues that under *Zimmerman v. University of Utah* the statute of limitations runs "from the final administrative decision rather than the initial adverse action."[75] Ms. Adams's reliance on *Zimmerman* is erroneous for two reasons. First, the court in *Zimmerman* did not address, let alone decide, whether post-termination administrative decisions can trigger the statute of limitations.[76] Instead, the court considered whether notice of termination or actual termination "could be an 'adverse employment action' triggering the 180-day clock," and held that either action could, depending on "whether and to what extent the employee is seeking damages arising out of one or the other of these actions."[77] Here, Ms. Adams seeks damages from the loss of employment, which makes either the May 22, 2024 notice of termination or the June 22, 2024 effective date of termination the relevant adverse action to decide the timeliness of

---

[71] *Nelson*, 2022 WL 957597, at *4. *See also* Utah Code Ann. §§ 67-21-4(1)(b)(i)(A), 67-21-3.6.
[72] Utah Code Ann. § 67-21-4(1)(b)(i)(B).
[73] Utah Code Ann. § 67-21-4(1)(b)(i)(A).
[74] Opp'n 10–14.
[75] Am. Compl. ¶ 114; Opp'n 10–13; *Zimmerman v. Univ. of Utah*, 2018 UT 1, 417 P.3d 78.
[76] *See Zimmerman*, 2018 UT 1, ¶ 1.
[77] *Id.* ¶ 30.

her claim.[78] Even under the later date, Ms. Adams's claim would be time-barred by 125 days because she filed her complaint on April 23, 2025—305 days from June 22, 2024.[79]

Second, *Zimmerman* analyzed an older version of the UPPEA that materially differs in the definition section from the version in effect during the relevant time period.[80] UPPEA's broad definition of "adverse action" has been eliminated since *Zimmerman*, so the basis of a claim under the UPPEA must be one of the specific retaliatory actions provided for by the statute. As described above, "retaliatory action" is defined, in relevant part, as "(a) dismiss[ing] the employee, reduc[ing] the employee's compensation, . . . or (e) threaten[ing] to take an action described in (11)(a) through (d)."[81] None of these actions include post-employment decisions by a third party, or administrative reviews following a termination. "[T]he starting point for interpretation of a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."[82] Ms. Adams points to no evidence of legislative intent to contradict the statutory language that limits the basis of a claim to enumerated retaliatory actions that can only take place before an employee is terminated. And the change to the applicable version of the UPPEA signals at least an implied legislative intent to narrow the types of qualifying actions for a retaliation claim.[83] For these reasons, Ms. Adams's reliance on *Zimmerman* is misplaced and does not support her rationale that her UPPEA claim is timely under the first limitations period.

---

[78] Am. Compl. ¶ 115.
[79] *Id.* ¶ 56, Ex. A at 2 ¶ 3.
[80] *Compare* Utah Code Ann. § 67-21-2 (2013) *with* Utah Code Ann. § 67-21-2 (2023). Because other sections of the current version do not materially differ from the 2023 version for purposes of this case, the court cites to the current version for the ease of the reader, unless otherwise noted.
[81] Utah Code Ann. § 67-19a-101(11).
[82] *Kaiser Alum. & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990).
[83] *Compare* Utah Code Ann. § 67-21-2 (2013) *with* Utah Code Ann. § 67-21-2 (2023).

### B. The Second Limitations Period Does Not Apply to Ms. Adams's Claim.

Next, Ms. Adams argues the second limitations period applies, yet she does not allege that the District has established the independent personnel board described in the statute or that she has exhausted her administrative remedies by filing a claim with such a board.[84] Instead, she conflates the District's appeals process for termination, governed by a different statutory scheme, with the UPPEA's administrative remedies for whistleblowers.[85] She also suggests the 180-day clock must wait for a final decision on appeal because otherwise she would be forced to choose "between exhausting remedies and preserving the right to sue."[86] This reasoning fails because it mistakes the District's appeals process with the administrative remedies described in the UPPEA, because it is unsupported by "sufficient factual matter"[87] to be plausible, and because even if she believed she had to wait until her appeal was denied—on October 28, 2024—she still had time to file within the 180-day limitations period, which ended at the latest on December 19, 2024.

In sum, Ms. Adams has not established that the second limitations period—Utah Code § 67-21-4(1)(b)—applies to her UPPEA claim. Thus, her claim falls under UPPEA's first limitations period—Utah Code § 67-21-4(1)(a)—and is undisputedly time-barred.

---

[84] Opp'n 12–13. *See, e.g., Nelson*, 2022 WL 957597, at *4. *See also* Utah Code Ann. § 67-21-3.6 (setting forth the requirements: a local whistleblower ordinance, an independent review board, procedures for filing whistleblower complaints, and authorized remedies).
[85] Opp'n 11–13. *See* Utah Code Ann. § 53G-11-513 (outlining dismissal procedures for school district employees).
[86] Opp'n 13.
[87] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).

## ORDER

Accordingly, the court GRANTS IN PART the District's Partial Motion to Dismiss as to the procedural due process and UPPEA claims. The claims are dismissed without prejudice.[88]

Signed March 10, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[88] ECF No. 31.